# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MONA SMITH and LAVONNE
LUSTER and MICHAEL LUSTER,

            Plaintiffs,

vs.                                                        CIV-03-0077 JC/LFG

FEDEX GROUND PACKAGE SYSTEMS, INC.,
a foreign corporation,

            Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed October 21, 2003 (*Doc. 25*). The Court, having considered the motion, memoranda and other pleadings, consulted the relevant authority, and being otherwise fully advised, finds the motion well taken in part and it is, therefore, granted in part.

## I.   <u>Background</u>

Plaintiff Mona Smith, an independent contractor, executed a Pick-Up and Delivery Contract Operating Agreement ("Operating Agreement") with Defendant FedEx Ground ("Defendant") (formerly RPS, Inc.) on or about November 7, 2000. Ms. Smith is the only Plaintiff in this lawsuit who had a contractual relationship with Defendant. Per the contract, Ms. Smith picked up and delivered small packages for Defendant.

Defendant implements a program called "FedEx Ground Safe Driving Program." Def's Memo., Exh. F. The program allows Defendant to effectively manage its own exposure through self-coverage for public liability and property damage risks supplemented by insurance coverages with a

commercial insurance carrier. *Id.* The liability protection is provided cost-free to each contractor who maintains a high standard of care at all times while operating a motor vehicle. However, any driver, without exception, who does not comply with the FedEx Ground Driver Safety Standards ("Safety Standards") as published by FedEx is disqualified from participation in the program. *Id.*

On or about March 21, 2002, Ms. Smith was at fault in a single-car auto accident which allegedly damaged the property of an individual not a party to this lawsuit. As a result of the accident and, more particularly, Ms. Smith's failure to report it to Defendant in a timely manner which is expressly prohibited by the Safe Driver Program, Defendant terminated the indemnity insurance policy it carried on Ms. Smith. *Id.* Rather than bear the cost of the necessary coverage herself or allow her Operating Agreement to be canceled for lack thereof, on or about May 14, 2002, Ms. Smith sold her route and equipment to Ron Apple. Mr. Apple had an existing Operating Agreement with Defendant, executed on or about July 14, 1998. Ms. Smith asserts that as a direct and proximate result of the insurance cancellation, she was "placed under duress" by Defendant and "lost" her contract, which was later purchased by a man. Compl. at 2. Plaintiffs' Complaint also alleges that Timothy Voges, the FedEx Ground Senior Manager at the Farmington location, required Ms. Smith to work overtime while not requiring the same of male drivers, applied traffic rules and regulations against female drivers when such rules were not applied in the same way against male drivers, and on various occasions Mr. Voges cornered her alone in a room in an effort to intimidate her by raising his voice, which he never did to a male employee. Compl. at 3. Ms. Smith stated in her deposition the she never successfully filed a charge of discrimination or retaliation with the Equal Employment Opportunity Commission ("EEOC") and never received a right to sue letter. Def's Memo., Exh. A at 63.

Plaintiff LaVonne Luster ("L. Luster") and Plaintiff Michael Luster ("M. Luster") are a married couple who served as additional drivers for Mr. Apple.[1]  They were undisputedly subcontractors.  On one occasion in October 2002, L. Luster (Mr. Apple's daughter) informed the terminal manager that her truck was full and that she would not return to the terminal to pick up the remaining packages needing delivery.  The terminal manager marked the packages she left on the dock as "DNA," meaning that L. Luster  "did not attempt" to deliver them.  Mr. Voges spoke with Mr. Apple about the situation and Mr. Apple agreed to speak with L. Luster.  Plaintiffs' Complaint alleges that Mr. Voges has "created and maintains an oppressive workplace, making it difficult or impossible for [L. Luster] to work for her subcontractor."  Compl. at 4.  L. Luster further alleges that Mr. Vogues has been unsupportive of her and has yelled, cursed, and thrown things at her and other females.  *Id.*  L. Luster also complains that she "has been treated in a retaliatory and discriminatory fashion by the terminal managers who have supervised her" as a result of her testifying on behalf of a "Black  contractor against the Defendant Fed Ex Ground" in a prior, unrelated proceeding.  *Id.* at 5.  Like Ms. Smith, L. Luster alleges that she was discriminated against based on her gender.  L. Luster stated in her deposition that she never successfully filed a charge of discrimination or retaliation with the EEOC and that she never received a right to sue letter.  Def's Memo., Exh. A at 92, 93.

On or about August 23, 2002, M. Luster was notified that his Department of Transportation physical certification ("DOT physical") had expired on August 8, 2002.   Subsequently, M. Luster was informed that he would have to procure private insurance coverage if he wished to continue as

---

[1]As a matter of course, a contractor who owns and operates more than one van supplies additional drivers who are called "second van drivers" or "third van drivers," as the case may be. It is undisputed that these drivers are subcontractors.

a sub-contractor for Defendant.  Defendant claims this was a constructive firing, as private insurance

is prohibitively expensive.  Compl. at 7.  His federal claims are derivative of L. Luster's claims, for

he alleges he was discriminated and retaliated against by Defendant because he is associated by

marriage to L. Luster, who testified on behalf of a black person and against Defendant in another

matter and who attempted to file a complaint against Defendant with the EEOC.  M. Luster stated

in his deposition that he never filed a complaint with the EEOC or received a right to sue letter.  Def's

Memo., Exh. E at 40.

## II.   <u>Standard of Review</u>

A party is entitled to summary judgment on all or any part of a claim as to which there is no

genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of

law.  Fed.R.Civ.P. 56(c).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  For purposes

of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving

party.  *Id*.  The moving party has the initial burden of showing that there is no genuine issue of

material fact.  *Id.* at 256.  The movant may discharge this burden by pointing out the absence of

evidence to support one or more essential elements of the non-moving party's claim, as "a complete

failure of proof concerning an essential element of the non-moving party's case necessarily renders

all other facts immaterial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must

do more than merely show that there is some metaphysical doubt as to the material facts.  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The party opposing the

motion may not rest on mere allegations or denials of pleading, but must set forth specific facts

showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256.  To meet this burden, the non-

movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

## II.   Discussion

### A.   *Section 1981 Claims*

Plaintiff L. Luster asserts a claim pursuant to 42 U.S.C. Section 1981.[2] Specifically, L. Luster claims that Defendant discriminated against her in retaliation for her testimony on behalf of a black person and against Defendant in another matter.[3]

In order to proceed with this claim, L. Luster must provide evidence of intentional discrimination based on race. *Kendrick v. Penske Transportation Svcs., Inc.*, 220 F.3d 1220 (10th Cir. 2000). Defendant asserts that any Section 1981 claim must fail, in part because "'based on race' clearly means the race of the individual complaining about the discrimination, not the race of some third party not even involved in the complained-of events." Def's. Reply at 3. Insofar as Defendant suggests that L. Luster lacks standing to bring her claim under Section 1981 because she alleges discrimination based on the race of another and not her own race, Defendant is incorrect. The

---

[2]Ms. Smith originally complained of a Section 1981 violation as well but, recognizing that gender discrimination cannot give rise to a cause of action pursuant to Section 1981, she has abandoned this claim. Resp. at 4.

[3]M. Luster previously asserted a 1981 claim derivative of L. Luster's claim. Though he apparently abandoned any such claim in the Response brief, any such claim would fail for the same reasons as L. Luster's, discussed above.

Tenth Circuit has held that a Section 1981 discrimination claim may stand where the race of another individual forms the basis for the claim. *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir. 1988). That said, L. Luster's Section 1981 claim must still fail, for she has produced insufficient evidence in support thereof. In fact, the Court finds nothing but bald assertions behind the theory that L. Luster was discriminated against based on the race of anyone. Defendant correctly identifies a complete lack of evidence establishing that Mr. Vogues had any knowledge of L. Luster's alleged testimony in another discrimination action. The uncontroverted evidence of record on this issue is contained in Mr. Vogues' affidavit, in which he states that he had no knowledge of any such testimony. Pl's Memo., Exh. C. This makes it impossible for L. Luster to establish (1) that Mr. Vogues intentionally discriminated against her or (2) that there is any causal connection between her employment termination and the testimony she purportedly gave on behalf of another individual. Therefore, the Court need not discuss the remaining essential elements of discrimination or actionable retaliation, most of which would also prove unsupported by evidence here. Further, any claim M. Luster asserts under Section 1981 is derivative of L. Luster's claim and must fail for the same reasons. M. and L. Luster's claims under Section 1981 are dismissed for lack of supporting evidence on intent and causation.[4]

      B.    *Section 1983 Claims*

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

---

[4]These claims may also be properly dismissed for lack of state action, as discussed below.

equity, or other proper proceeding for redress.

42 U.S.C. § 1983.   State action, or operating "under color of state law," is a jurisdictional requirement.   *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).     In an attempt to show the requisite state action and save their claims from dismissal on summary judgment, Plaintiffs "posit that FedEx Ground is a state entity for purposes of its unlawful actions in that it carries the mail or the equivalent of mail and is thus involved in operations under color of law."   Resp. at  4.  As authority for such postulation, Plaintiffs first reference Section 66-1-4.11(A) of the Motor Vehicle Code as evidence that the legislature recognizes the possibility of mail being delivered by private entities.  *Id.*  Plaintiffs then begin referring to Defendant as a private entity acting in a public function when delivering mail, and the Court does not quite follow.  Plaintiff's argument appears to be this:  The government delivers mail; the Defendant delivers mail; the notice provisions in the Motor Vehicle Code mention the possibility of notice-by-mail being delivered by private entities, *ergo* Defendant is transformed from a private corporation engaged in the delivery of small packages for its private customers into a state actor that can be held liable for civil rights violations.  The Court disagrees and will "posit" that making frivolous arguments involving such tremendous leaps in logic can destroy credibility.

Moreover, as Defendant correctly points out, the two cases cited by Plaintiffs on this issue actually prove supportive of Defendant's position.  Specifically, *Duran v. New Mexico Monitored Treatment Program*, 996 P.2d 922 (N.M. App. 2000), is cited for the general proposition that a private entity can be considered an agent of the state under some circumstances, yet that case does not support a finding of state action on the facts of this case.  In *Duran*, a private entity operating a counseling program which an employee of the University of New Mexico Hospital entered, could not

7

be held liable for civil rights violations because the requisite state action was not present. *Id*. The type of direct connection between a state agency and a private entity necessary to create state action is exemplified and discussed in *LaBaldo v. Hymes*, 115 N.M. 314 (Ct. App. 1993), the second case cited by Plaintiffs. The discussion in *LaBaldo* serves only to emphasize the absence of any sufficiently direct contact or relationship to support a finding of color of law in this case, regardless of how the facts are manipulated. The Court finds that Plaintiffs' claims under Section 1981 and 1983 must fail for lack of state action.

C.   *Title VII Claims*

Ms. Smith acknowledges that she was an independent contractor for Defendant and the Lusters both stated that they were employees of independent contractor Mr. Apple. Because it goes undisputed that no Plaintiff in this matter was or is actually an *employee* of Defendant, the Court must assume it is Plaintiffs' position that a Title VII claim may properly be brought by an independent contractor or subcontractor. In support of that position, and ultimately in defense of their Title VII claims, Plaintiffs offer solely a 1975 federal district court case from Louisiana in which there is no discussion whatsoever of whether independent contractors would or should be considered employees for purposes of Title VII. This is inadequate to defeat Defendant's Motion for Summary Judgment on Plaintiffs' Title VII claims.

Furthermore, even if any Plaintiff could establish employee status, no Plaintiff has exhausted available administrative remedies, which is a jurisdictional prerequisite to filing suit under Title VII.[5]

---

[5]Some circuits have held such filing to be a condition precedent or an affirmative defense that can be waived if it is not asserted by the defendant rather than a jurisdictional requirement. *See, e.g., Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989); *Temengil v. Trust Territory of Pacific Islands*, 881 F.2d 647, 654 (9th Cir. 1989); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1005 (11th Cir. 1982).

*Jones v. Runyan*, 91 F.3d 1398 *citing Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir. 1993) ("administrative 'exhaustion is a jurisdictional prerequisite to suit under 42 U.S.C. § 2000e-16.'"). *Accord Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 137-39 (4th Cir. 1995) (before a federal court may assume jurisdiction over a claim under Title VII, a claimant must exhaust administrative procedures), *Bullard v. Sercon Corp.*, 846 F.2d 463, 468 (7th Cir. 1988) ("Title VII's requirement that the plaintiff exhaust the administrative remedies provided by the statute is jurisdictional; that is, a court is obligated to enforce the requirement even if the defendant has overlooked it."). Specifically, a Title VII plaintiff must bring an administrative charge of discrimination before the EEOC. 42 U.S.C. § 2000e-5(e) and (f)(1); *Aronson v. Gressly*, 961 F.2d 907, 910 (10th Cir. 1992).

No Plaintiff has provided even a scintilla of evidence of filing a complaint with the EEOC. Plaintiffs instead make a general, unsupported assertion that rejection of an application for review by the EEOC--presumably for lack of employee status-- constitutes "exhaustion." It is well-settled, however, that a party must support its argument with legal authority. *Primas v. City of Okla. City*, 958 F.2d 1506, 1511 (10th Cir. 1992). In sum, the Court finds no viable cause of action under Title VII, for Plaintiffs were not employees of Defendant and they have not exhausted their administrative remedies as contemplated by the statute.

### D.    *Plaintiffs' State Law Claims are Remanded*

Counts I, II, and III having been dismissed, Plaintiffs' remaining claims in Counts IV, V, VI, VII, VIII, and IX  are all governed by state law. This Court's jurisdiction over such claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The decision of whether to exercise such jurisdiction lies within the Court's sound discretion. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

351 (1988); *Archuletta v. Lacuesta*, 131 F.3d 1359, 1368 n. 4 (10th Cir. 1997).  The Court declines

to entertain these claims and will instead remand them to state court for appropriate resolution.

**III.** **Conclusion**

In summary, the Court finds no genuine issue of material fact on any of Plaintiffs' federal

claims in this matter and Defendant is entitled to judgment on Counts I, II, and III as a matter of law.

Therefore, Counts I, II, and III of Plaintiffs' complaint are dismissed with prejudice pursuant to Rule

56(c) of the Federal Rules of Civil Procedure.  Having dismissed all federal claims in this matter, the

Court remands the remaining New Mexico state law claims in Counts IV, V, VI, VII, VIII and IX

to state court for proper resolution.

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed October 21, 2003

(*Doc. 24*) is granted in part as follows:

(1)  Counts I, II, and III are dismissed with prejudice.

(2)  Counts IV, V, VI, VII, VIII and IX are remanded to the Eleventh Judicial District, County of San Juan, State of New Mexico.

Dated April 1, 2004.

_____

SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

     F. D. Moeller, Esq.
     Farmington, N.M.

Attorney's for Defendant:

     Theresa W. Parish, Esq.
     Deborah S. Gille, Esq.
     Rodey, Dickason, Sloan, Akin & Robb, P.A.
     Albuquerque, N.M.